# Hawkins *et al. v.* Ragan *et al.*

Administrator's Sale.—In an application, in the Court of Common Pleas, by an administrator, for the sale of real estate of his intestate, the record says: "It appeared to the satisfaction of the Court that process had been served on the defendants," some of whom were minors, "more than ten days before the first day of the term," &c., and thereupon a guardian *ad litem* was appointed and answered for the infants. The record on appeal shows that writs were regu-

Hawkins et al. *v.* Ragan et al.

larly issued against the defendants, but fails to show that any returns were ever made thereon. The application was granted by the Court; the land directed to be sold at public auction; it was so sold; and the auctioneer, whom the administrator had employed to cry the sale, having himself made the last and highest bid therefor, said land was sold to him by the administrator. The sale was duly reported to and confirmed by the Court. After the money had been paid according to the terms of the sale, the fact was duly reported to the Court, and, upon further consideration, a deed was ordered to be executed to the purchaser. Two years afterwards, a deed was made and reported and approved. Over eleven years after the confirmation of the sale, the heirs of the intestate sue *for the possession of the land.*

*Held,* 1. That the facts recited in the record do not exclude the inference that due notice was given to the defendants of the pendency of the application, and it will therefore be presumed by this Court that it was given.

2. That the sale to the person acting as auctioneer, under the circumstances, was a sale to a third person and valid.

3. But, if the auctioneer should be held to have been a trustee, and his purchase to have been therefore unauthorized, yet it could not be impeached collaterally, as it is attempted to do in this case, but it should have been attacked in a direct proceeding to set aside the sale, and re-offer the property; and such proceeding should have been commenced in a reasonable time after the sale and confirmation, and before the property had passed into the hands of *bona fide* purchasers, without notice.

APPEAL from the *Marion* Circuit Court.

PERKINS, J.—*Noah Ragan* was administrator upon the estate of *Jesse Hawkins,* deceased, and on the 2d day of *December,* 1847, he filed his petition in the proper court for the sale of real estate of said *Jesse,* deceased, for the payment of his debts. He made *Jesse's* heirs parties defendant, viz: *Layton, Sarah, Rachael, Hannah, Martha Ann, Isaac, John* and *Martha Hawkins.* Afterwards, on the 20th day of *De-*

*cember,* the record says, it appearing to the satisfaction of the Court that process had been served more than ten days before the first day of the term, &c., *H. C. Newcomb, Esq.,* was appointed guardian *ad litem,* and answered for *Rachael, Hannah, Martha Ann, Isaac* and *John Hawkins,* infant heirs of *Jesse,* and a default was taken against *Layton, Sarah* and *Martha,* adults.

Regularly issued writs are copied into the transcript before us. Returns upon them are not. A sale of land was ordered. Afterwards, on the 18th day of *April,* 1848, the administrator reported that he had made a sale of a piece of the land of *Jesse* to *James Wilson,* the sale having been made on the 5th of *February,* 1848. The sale was approved and confirmed by the Court on the 20th day of *April,* 1848.

Afterward, at the *August* term of the Court, 1850, the administrator reported full payment of the purchase-money by *Wilson,* and the Court, having examined the matter, ordered a deed, &c.

Afterward, at the *August* term of the Court, 1852, a deed was reported, approved and ordered to be delivered.

At each of the recited proceedings in Court, the record shows that a petition was filed narrating the previous proceedings and orders in the cause, and that the subject matter of the petition was, on each occasion, considered and adjudicated upon by the Court.

The proceedings seem to have been conducted with care and under watchfulness on the part of the Court.

On the 21st of *November,* 1859, this suit was instituted by the heirs of *Hawkins* against all persons interested, to establish their title to, and to recover possession of the land sold, as above set forth, by the administrator of the estate of *Jesse Hawkins.* That sale, we have already seen, was confirmed on the 20th day of *April,* 1849, eleven years, seven months and

one day anterior to the commencement of this suit. See 2 G. & H. p. 159, and cases cited in notes.

This suit is not a direct proceeding to reverse or set aside the order of sale, or the judgment of confirmation, but, leaving them undisturbed, to recover possession of the land on the ground that the proceedings in which the sale was had are void. Those proceedings are attacked collaterally, not directly, by this suit.

The complaint contained four paragraphs.

A demurrer was sustained to two of them, and issues of fact were formed and tried upon two of them. There was judgment for the defendants on the trial of the issues of fact, and no exceptions were taken whereby the evidence given can be brought to this Court, or the merits of the case upon those issues be otherwise reviewed. And if all the questions, arising upon the demurrer to the two paragraphs that were held insufficient, could have been tried under the issues upon the other two, it would be unnecessary that we should examine the ruling upon the demurrer. We think the issues tried upon the two paragraphs embraced the entire merits of the case; but we waive the point and will examine the two questions argued, in his brief, by appellant's counsel.

1. Is jurisdiction over the persons of the heirs to be presumed upon the statements in the transcript of the record of the Probate Court which ordered and confirmed the administrator's sale of the land? We think it is. The Probate Court was, and the Common Pleas is a Court of general jurisdiction, whose action is to be judged, subject to the presumptions accorded to that class of Courts. *Doe* v. *Smith*, 1 Ind. 451.

The rule as to presumption of notice in such Courts is that, where the facts recited in the record do not reasonably exclude the inference that notice was given to the defendants, of the pendency of the suit, it will be presumed that it was

given.   *Gerrard* v. *Johnson,* 12 Ind. 536;  *Cox* v. *Mathews,* 17 *id.* 367.

In the case at bar, writs were issued in time for regular service and return.   They were returned.   The Court says, as a part of its judgment, that it appeared to it that they had been duly served.   The record in no manner excludes the inference that they had been served.   The return of service may have been omitted by the Clerk in making out the transcript.   He has not said, in a way that can be respected by this Court, viz : by return to a *certiorari,* that the returns are not upon the original writs; or that they may not have been made upon separate papers on file with the writs.   Such returns may have existed and been lost.   And even if the Clerk had said there never had been any returns in the office, it perhaps might have been shown to the Probate Court that the writs had been served, by parol evidence, not made a matter of record; perhaps we should, in a case of necessity, which this is not, indulge such a presumption.

2. At the administrator's sale, *Ragan,* the administrator, procured *Wilson* to cry the sale for him.   *Wilson,* the crier, made the last bid for the property himself; *Ragan,* the administrator, accepted it, reported *Wilson* to the Court as the buyer; the matter was considered by the Court, the sale, three several times, as we have seen, was approved by the Court, and a deed finally made and approved pursuant to it.

Now, we are inclined to think this was a sale by the administrator to a third person and valid.   We doubt whether a mere mouth piece for an administrator, in his presence performing simply the special act of crying a sale of a piece of ground, is a person to be classed among those standing in a trust relation, such as to disable him to purchase at the sale. See *Lewis* v. *Reed,* 11 Ind. 239.   But for the purposes of this case we will concede *Wilson* to have been a trustee purchasing the trust estate of himself, and what follows ?

1. Such a purchase is not void at common law but voidable. If authorized by the Court before the sale, or sanctioned and confirmed by it afterwards, it may stand. Hill on Trustees, top p. 237, side p. 159; *Huff* v. *Earl*, 3 Ind. 306.

2. The mode of avoiding it is to apply to Court within a reasonable time to have it set aside and the property re-exposed to sale. *Brackenridge* v. *Holland*, 2 Blackf. 377; *Doe* v. *Harvey*, 3 Ind. 104; see *id*. 277; *Martin* v. *Wyncoop et al.*, 12 Ind. 266.

3. But this remedy can not be made available after the estate has passed into the hands of *bona fide* purchasers without notice, as it is shown by the record to have done in the case at bar. Hill on Trustees, side p. 509. But the *cestui que trust* will be entitled to the profits made by the trustee in his sale. *Beckett* v. *Bledsoe*, 4 Ind. 256; *Brackenridge* v. *Holland*, *supra*.

*Per Curiam.*—The judgment below is affirmed, with costs.

*John Caven*, for the appellants.

*Newcomb & Tarkington*, and *Barbour & Howland*, for the appellees.