Filed March 18, 1885.

---

No. 11,851.

## BRISTOR ET AL. *v.* BRISTOR.

HUSBAND AND WIFE.—*Decedents' Estates.—Rents from Wife's Land, Husband's Liability for.—Trusts.—Acquiescence.*—Where a husband, during a long series of years, receives and applies the rents of the wife's real estate to the common use of the family, without objection by her, and under circumstances showing no intention on the part of either that he shall be charged therewith, she can not, after his death, maintain a claim therefor against his estate; nor can she, where such rents have been invested by the husband, with her knowledge, in other real estate, for the benefit of the family, after acquiescing in such use for a period of more than twenty years, claim him as her trustee to the extent of such investment, but she will be deemed to have waived all right to follow such rents into the property.

From the Marion Circuit Court.

*L. Ritter, E. F. Ritter* and *B. W. Ritter,* for appellants.
*H. J. Milligan, R. Hill* and *R. N. Lamb,* for appellee.

FRANKLIN, C.—Appellants William A. Bristor and Elizabeth Hamlet, as the only children and as heirs of Samuel M. Bristor, deceased, sued Esther Bristor, their mother, and the widow of said deceased, for two-thirds of the rent for the home residence occupied by the widow.

The appellee and said Samuel M. Bristor were married in 1842, and he died in 1879 intestate. Appellee was the daughter of one Christopher Kellum, deceased, and in July, 1842, she and her brother, John Kellum, agreed upon a partition among themselves of all the real estate of which their father died seized, they being his only heirs. Part of the real estate embraced in this agreement was a lot on Washington street,.

adjoining the property upon which the building known as the "Vance Block" is now situated, in the city of Indianapolis. By this agreement, this lot was to be set off to appellee, the deed to which from said John Kellum was executed to her and her husband jointly. Her husband afterwards built a store-room upon this property, which building is yet standing. The husband was a carriage maker, and an industrious and economical man. In 1858 he bought a lot on Delaware street, in Indianapolis, taking the deed in his own name, and erected a dwelling-house thereon, in which house he resided until his death, and this is the property in controversy. After the death of Samuel M. Bristor, in 1879, appellee was appointed administratrix of his estate, and filed a claim against said estate, alleging that deceased had collected the rents of the Washington street property in a large sum, which she was entitled to recover against his estate, which was disallowed by the court. An appeal was taken to this court, and the judgment reversed for error in the admission of testimony. The case is reported as *Bristor* v. *Bristor*, 82 Ind. 276.

Another trial was had, resulting in favor of appellee, who recovered a judgment for $5,000. The case was again brought to this court, and the judgment again reversed, upon the ground that the evidence showed no right of recovery in appellee, and is reported as *Bristor* v. *Bristor*, 93 Ind. 281.

While that case was last pending in the court below, the appellants each brought suit against appellee to recover their respective portions of the rent of the Delaware street property, of which they each claimed to have one-third, inherited from their father. No question is made as to the Washington street property; appellee's title to that is not disputed. By agreement these two actions for rent were consolidated.

Appellee filed an answer alleging a resulting trust in her favor in the Delaware street property, and setting up title in herself. She also filed a cross complaint containing, substantially, the same averments, asking to quiet her title to that property, basing her claim upon averments that the

Delaware street property was purchased and improved with her separate property, to wit, the rents collected from the Washington street property.

Demurrers were filed to the several paragraphs of the answer and cross complaint, and were overruled, and the issues were then closed by reply and answer to cross complaint.

By agreement of parties, this cause and the said claim against the estate, which appellants had been admitted to defend, were tried together, the same evidence being given for both. There was a trial by the court, a finding against appellee upon her claim against the estate, and in her favor upon her cross complaint in the other action, quieting her title to the Delaware street property. Over a motion for a new trial judgment was rendered upon the verdict.

The errors assigned are, overruling the demurrers to the answer and cross complaint, and overruling the motion for a new trial.

We think this case is substantially disposed of by the former decision of this court, reported in 93 Ind. 281, *supra.* In that case the court in effect says, that under the statute of 1852, the wife has a right to the rents accruing from her separate property. "If the evidence showed that the wife had asserted a direct claim to the rents, and that the husband had retained them notwithstanding this claim, we should have no difficulty in sustaining the finding of the trial court" (which was in favor of the claimant), "but no such claim was made, nor is there any evidence from which it can legitimately be inferred that any such claim was ever asserted."

While there was additional testimony given in this case to what was given in the former case, there is no material difference upon the question of the wife's ever claiming the rents as her separate property.

In the former case the court further says: "It is evident that where there is no tort no charge can be created against the husband in favor of the wife unless there is something

in the nature of an agreement, express or implied, upon which to base the liability. No one can be charged as a trustee where there is no liability growing out of a contract or duty, or springing from a tort. The rule which applies in ordinary dealings between parties not sustaining marital relations upon the subject of implied contracts can not, it is obvious, apply in its full force where the relation of husband and wife exists. The relation of the parties has always been regarded as exerting an important influence upon the question. *Andrews* v. *Huckabee,* 30 Ala. 143; *Hill* v. *Chambers,* 30 Mich. 422. If the facts show that the husband received the rent from his wife's separate estate, intending to be charged, or received and used it over her objection, then, no doubt, he would be liable, no matter to what purposes of his own he may have applied them; if, on the other hand, the circumstances show that the wife did not intend to charge the husband, and that he did not intend to account, then the courts can not, after his death, charge his estate." See authorities therein cited.

In the opinion in the case *supra,* the case of *Hileman* v. *Hileman,* 85 Ind. 1, is criticised and doubted, whether it ought not be limited in some degree at least, "for it may well be questioned whether the mere fact of entering upon the duty of managing the wife's property constitutes the husband a trustee in all cases." For, where the husband uses the wife's money for the common benefit of the family, no charge accrues against him, "in the absence of evidence of an understanding or agreement on his part to repay her." See authorities cited in support thereof.

Appellee and deceased were married in 1842; at that time deceased had very little property; appellee owned the Washington street lot, with an old frame building situated thereon, and some Hendricks county real estate. In 1853 or 1854 they sold the Hendricks county land, and with the proceeds thereof, the rents of the Washington street property, and some borrowed money by deceased, the old frame building was re-

moved, and a new brick business house was erected upon the Washington street lot at a cost of some $4,000.

In 1858 the deceased purchased and improved the property on Delaware street as a residence, using the rents from the Washington street property, and perhaps some borrowed money, for that purpose, at a cost of $5,000. The rents had all the time been managed and used by deceased in support of the family, improving the Washington street property, and providing for them a residence, without any objection from appellee, or claim made thereto by her during the lifetime of the deceased, nor until these suits were commenced. After the business had been thus managed for over thirty-seven years, it appears rather late for appellee to assert a claim to the rents, and thus wipe out from deceased's children and creditors all the earnings and accumulations of the husband during a lifetime business. We do not see manifested in the transaction of the business any intention in either of the parties to create a trust in the deceased to the extent of the use of the rents of the Washington street property. Such use of the rents, without any separate account thereof being kept by either of the parties, raises a strong presumption that she consented to said use. The Washington street property was held jointly by the husband and his wife. The rents were collected and used in the same manner, for the general benefit of the family. The husband did not use them as her separate property. There is nothing in the record in the case tending to show that at the time the husband collected the rents it was intended by either of the parties that the rents, or any part thereof, should be held by him as her separate property. The evidence all shows that at that time, by common acquiescence, the husband used the rents with his own means, and as his own means, for the benefit of the family generally, without any intimation that he or his estate should be held accountable therefor. Prior to the passage of the act of 1852 the rents of the wife's property belonged to the husband by virtue of his marital rights. But after the pas-

.sage of that act the wife had the right to control such rents as her separate property, but that right she could undoubtedly yield to the husband. We think the finding of the court against appellee on her claim against the estate was right.

If she had no claim against the estate for the funds thus used, upon what principle could she have a claim upon the property in which said funds, or a part thereof, had been invested? In quietly acquiescing for more than twenty years in the use of the rents made by the husband, we think she must be deemed to have waived all right to follow them into the property.

The only thing in the evidence derogatory to this view of the case is that Thomas C. Chill as a witness, testified that about a month before the death of deceased, in 1879, twenty-one years after the execution of the deed, he heard deceased, in a conversation on the street in Indianapolis, say that his wife did not know that the deed to the Delaware street property was made in his name for some time afterwards, and, when she learned it, she objected and was dissatisfied, and that he intended to change it after awhile. What her objections were, or how he intended to change the deed, was not explained. The wife undoubtedly had full knowledge of the purchase of the property, and the manner in which it was paid for and improved as a residence for the family. Nothing appears to have been said at the time of the purchase as to in whose name the property should be held; whether in either of their names individually, or both jointly, like the Washington street property, did not then appear to concern the wife. And without any agreement then expressed or implied, or tortious act by the husband, no trust could arise therefrom in behalf of the wife. *Bristor* v. *Bristor*, 93 Ind. 281, *supra*. We do not think that this additional testimony, to what was given upon the former trial, tends to establish any trust at the execution of the deed.

The whole evidence in the case shows that appellee asserted no claim to the rents as her separate property, and that

she treated them as a gift to the husband, to be by him invested in any manner. he might desire for the general welfare of the family; and, after being so invested, she could not legitimately claim him as her trustee to the extent of such investment.

We see no error in the rulings upon the pleadings, but think the evidence does not fairly tend to support the finding in favor of appellee upon her cross complaint, and that the court erred in overruling appellant's motion for a new trial. The judgment ought to be reversed.

PER CURIAM.—It is therefore ordered upon the foregoing opinion, that the judgment of the court below be and it is in all things reversed, at appellee's costs, and that the cause be remanded with instructions to the court below to grant a new trial, and for further proceedings.

Filed Jan. 8, 1885; petition for a rehearing overruled March 20, 1885.