Myers *et al. v.* Boyd *et al.*

No. 17,663.

MYERS ET AL. *v.* BOYD ET AL.

STATUTE CONSTRUED.— *Change of Construction.— Effect on Vested Rights.—Courts.*—The interpretation placed by the supreme court at the time of an administrator's sale of land for payment of debts, upon sections 2483, 2487, R. S. 1881, that a childless widow whose husband left children by a former wife took only a life estate in one-third of his lands, which interpretation was accepted by the court and all the parties to the proceeding, will be adhered to in determining the validity of such sale in a subsequent action to partition the land, notwithstanding a subsequent interpretation that it gives an estate in fee simple to such widow.

ESTOPPEL.—*Heirs Joining in Administrator's Sale of Land.—Life Estate of Widow.*—In a sale of land by an administrator, if the heirs, being the owners of one-third of the land subject to the life estate of the widow, join in the proceedings for the sale and accept the price paid for it by the purchaser, they are thereafter estopped to deny the validity of the sale of the one-third subject to the life estate.

From the Wayne Circuit Court.

*T. J. Newkirk,* for appellants.

*T. J. Study,* for appellees.

HOWARD, J.—This was an action brought by appellants against appellees for the partition of real estate.

Michael Myers died the owner of the real estate in question, leaving the appellants, his children by his first wife, except the appellant, Charles E. Templin, who is the only child of a deceased daughter by said first wife. Michael Myers also left surviving him his widow, Margaret, by whom he had no children. The appellants claim to be the owners of the undivided one-third of the land sought to be partitioned, as forced heirs of said Mar-

garet Myers, under provisions of the statute then in force. Section 2487, R. S. 1881.

To appellants' complaint for partition appellees filed a cross-complaint and a special answer, to each of which a demurrer was overruled. The appellants refusing to plead further, judgment was entered on the demurrers.

The overruling of the demurrers is the only error assigned. The appellees alleged in their cross-complaint, and also averred in their answer to appellants' complaint, that on the death of Michael Myers his administrator petitioned the court to make sale of all the land owned by said decedent at the time of his death, including his widow's interest therein, in order to make assets for the payment of his debts. Due notice of said petition was given to the appellants and to said widow; and all proceedings for said administrator's sale were taken as required by law. Said petition was filed, and the sale thereunder made with the full knowledge and at the desire and request of the widow and of the appellants, all of whom were parties to the proceedings. The widow appeared to the petition, consenting in her answer that the whole of said real estate should be sold, including the real estate and interest therein which had descended to her from her husband. This interest of the widow was conceived by her, and by all the parties concerned, to be a life estate in one-third of the land, and the sale was made with the understanding and agreement that the value of her said life estate should be fixed by the court after the sale should be made, and the same be paid to her by the administrator out of the proceeds, which was done.

The petition for the sale of the real estate was filed on November 9, 1880; the sale was made on February

15, 1881; and on March 1,1881, a deed, examined and approved by the court, was given to the purchaser by the administrator. On the same day, in pursuance of the agreement theretofore made, the widow, having received from the administrator the value of her life estate as fixed by the court, also executed to the purchaser her quit claim deed for the land.

On settlement of the estate there was left in the hands of the administrator, after payment of all debts and expenses of the estate, a balance of $2,025.73, which balance was paid to the appellants as heirs of said estate.

The appellees claim title to the land through mesne conveyances, by virtue of the administrator's deed so given. At the time the deed was made, and for more than twenty-two years prior thereto, it was held, by the uniform decisions of this court, beginning with *Martindale* v. *Martindale*, 10 Ind. 566, that under the provisions of sections 2483 and 2487, R. S. 1881, a second or subsequent wife, having no children by her husband, took a life estate only in his lands where he left, upon his death, children alive by a former wife.

At the May term, 1881, this court, in the case of *Utterback* v. *Terhune*, 75 Ind. 363, whether wisely or otherwise, changed the interpretation theretofore given to the said statutes; and since the latter case, the holding of the court has been that, under said sections 2483 and 2487, a second or subsequent childless widow took a fee simple in her husband's lands, when he died leaving children alive by a former wife, such land to go to said children on her death.

But in *Haskett* v. *Maxey*, 134 Ind. 182 (19 L. R. A. 379), it was held that the construction placed by the court upon the foregoing statutes at the time a contract thereunder was entered into, must determine the rights of the parties; and that a subsequent change in the con-

struction could not operate retroactively so as to impair the obligation of the contract.

In that case the following from *Ohio Life Ins.,etc., Co.* v. *Debolt,* 16 How. 415, was cited and approved: "The sound and true rule is, that if the contract when made was valid by the laws of the State, as then expounded by all the departments of its government, and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent act of the legislature of the State, or decision of its courts, altering the construction of the law."

So it was said by Chancellor Kent (1 Com. 475): "If a decision has been made upon solemn argument and mature deliberation, the presumption is in favor of its correctness; and the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions and contracts by it." See also *Stephenson* v. *Boody,* 139 Ind. 60.

In the case under consideration, the court trying the case, the administrator, the widow, the heirs, the purchaser at public sale, all understood and acted in accordance with the interpretation then, and continuously for years previous thereto, given to the statutes by the court of last resort, namely, that the widow took only a life interest in the undivided one-third of the lands left by her husband. We think the interpretation so made, and so understood by all the parties, should still prevail as to the sale thus made.

But it is said that the interpretation of the statute then made, and according to which the widow held only a life estate in the land, was simply as to her interest against the heirs, and not, as in the case at bar, against creditors; and that, in any event, the statute did not authorize the sale of the widow's interest, or the undivided one-third of the land, for the payment of the debts of the estate.

That is a contention which, perhaps, might have been successfully made at the time of the administrator's sale; but it would seem that the parties to that proceeding are not now in position to make it. While it is evident, as said in *Windell* v. *Trotter*, *Admr.*, 127 Ind. 332, "that the widow who owned a life estate only could not affect the interest of the children, who owned the fee, by giving her consent to a sale of the whole land;" yet, as said in the same case, it is also clear "that the heirs cannot be heard to say that the land was not properly sold, because they were parties to the petition to sell, and are bound by the proceedings."

The heirs in the case under consideration, the appellants at bar, are further bound by their own ratification of that sale. The amount received for the sale of all the land was $7,100. If we should consider that only two-thirds of this sum could be used by the administrator to pay debts, we should have $4,733.33 to be used for that purpose. The sum actually used by the administrator was $3,624.27, leaving $1,109,06 to be paid to the heirs from the sale of two-thirds of the land. The amount actually distributed to the heirs, however, by the administrator was $2,025.73. The difference between the last two sums was, therefore, money received by the administrator for the sale by him of the one-third of the land, the land here claimed by the same heirs. The one-third so sold by the order of the court belonged to these heirs, subject to the widow's life estate, as the law was then interpreted. These heirs joined in the proceedings for its sale, and they accepted, on distribution, their respective shares of the price received on such sale. They cannot now be heard to say that the administrator was not authorized to make the sale, nor the court to confirm it. Neither can they claim the land, having also received

the price paid for it.   Even, therefore, if the sale of the undivided one-third of the land by the administrator was unauthorized, the acts of the appellants, its owners, ratified the sale.   *Wilmore* v. *Stetler*, 137 Ind. 127; *Waters* v. *Lyon*, 141 Ind. 170, at p. 178; *Axton* v. *Carter*, 141 Ind. 672.

The question turns altogether on the appellants' ownership of the land, subject to the widow's life estate.   If the widow, in fact, owned the fee, the appellants could not ratify its sale; not being their land they could neither sell it nor ratify its sale.   *Horlacher* v. *Brafford*, 141 Ind. 528.   If, however, as the law was then construed, the appellants were the owners of the remainder in the land, subject to the widow's life estate, they could make a valid sale of that remainder; or, being parties to a proceeding for its sale, and acquiescing in such proceeding, and afterwards accepting the proceeds of the sale, they are now, in good conscience, estopped from claiming that the sale so made and ratified is invalid.

The judgment is affirmed.

Filed April 14, 1896.